# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MISLENI EASTMAN, individually and as Co-Administratrix of the Estate of J.E. (deceased) and as friend/next of kin of G.E.,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No. 3:09-cv-0825 |
| **MICHAEL R. POPE and CRETE CARRIER CORP.,** ) ) ) ) | Judge Trauger |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

In this tort action, the parties dispute which state's law should govern the measure of damages. The plaintiff and both defendants have each filed motions in limine regarding this choice-of-law question (Docket Nos. 62, 63, and 65); those motions, as well as the parties' respective responses in opposition (Docket Nos. 68, 71) and replies in support (Docket Nos. 74, 87), are currently pending before the court. For the reasons discussed below, the court will grant the plaintiff's motion and will deny the defendants' motions.

## BACKGROUND

This case arises from an automobile accident that occurred near Horse Cave, Kentucky on July 12, 2009.[1] Misleni Eastman and her two minor children, G.E. and J.E., were traveling on Interstate 65 in Kentucky when their vehicle was struck by a tractor-trailer driven by defendant Michael Pope and owned by defendant Crete Carrier Corp. ("Crete"). Pope had moved into the

---

[1] The central facts, as they relate to the instant motions, are undisputed. Unless otherwise noted, the facts are drawn from the parties' filings.

left lane to avoid traffic that was slowing for highway construction, but, in doing so, he crashed into stopped traffic, including the Eastmans' car. The impact killed J.E. and injured the other two passengers.

Kenneth Eastman, Misleni's husband and the children's father, has brought this suit on behalf of J.E.[2] He has asserted claims for negligence against Pope, vicarious liability against Crete, and negligent entrustment against Crete.

Kenneth, Misleni, and G.E. are all residents of Gallatin, Tennessee, as was J.E. Defendant Pope is a resident of Florida. Defendant Crete is a Nebraska corporation, with its principal place of business in Nebraska. Crete operates a terminal in Tennessee, but it does not have a terminal in Kentucky.

The instant dispute concerns how to properly calculate damages relating to J.E.'s death. The parties agree that, under Tennessee law, pecuniary damages in wrongful-death actions "take[] into account the decedent's probable living expenses had the decedent lived." *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 600 (Tenn. 1999). Thus, a plaintiff may recover the decedent's projected *net* earnings, not his or her projected *gross* earnings. Kentucky law, in contrast, does not deduct the decedent's projected living expenses and instead allows recovery of the decedent's projected gross earnings. *Charlton v. Jacobs*, 619 S.W.2d 498, 500 (Ky. Ct. App.

---

[2] Misleni Eastman originally filed this action on behalf of herself and her two children. Kenneth Eastman filed a separate suit in Kentucky state court; that action was removed to federal district court and transferred to this court. Kenneth then filed a second action in this court. The three actions were consolidated under this case number. (Docket Nos. 15, 26.) Since then, the parties have settled all claims, except for the wrongful death claim regarding J.E. (*See* Docket No. 38.)

1981).

The parties have filed motions in limine to address which state's law should govern this suit. The plaintiff seeks an order declaring that Kentucky law applies and barring the defendants from introducing evidence regarding J.E.'s projected living expenses; the defendants seek an order declaring that Tennessee law applies.

## ANALYSIS

In diversity actions, federal courts apply the choice-of-law rules of the forum state (here, Tennessee). *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997). Tennessee has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws. *Id.*; *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992).

The parties dispute whether Tennessee or Kentucky law should govern the issue of damages. Section 178 of the Restatement provides that "[t]he law selected by application of the rule of § 175 determines the measure of damages in an action for wrongful death." Restatement (Second) of Conflict of Laws § 178 (1971). Section 175, in turn, states:

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*Id.* § 175.

The Restatement sets out general choice-of-law principles in Sections 6 and 145:

> § 6 Choice-Of-Law Principles
>
> (1) A court, subject to constitutional restrictions, will follow a

statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

. . .

§ 145 The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a) the place where the injury occurred,

    (b) the place where the conduct causing the injury occurred,

    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

    (d) the place where the relationship, if any, between the parties

is centered.

*Id.* §§ 6, 145.

Because the accident at issue here occurred in Kentucky, the court will apply Kentucky law, unless Tennessee has a more significant relationship to the issue of damages. *Id.* §§ 175, 178; *MacDonald*, 110 F.3d at 342. This inquiry requires an examination of the four contacts listed in Section 145(2) of the Restatement. *MacDonald*, 110 F.3d at 342. The court is "guided in this analysis by general principles governing choice of law," including, among the other factors listed in Section 6 of the Restatement, "the interests of each state in having its law applied" and "the relevant policies of the forum." *Id.* "The Restatement test is a fact-driven approach that necessarily varies from case to case." *Id.* at 346.

Both Kentucky and Tennessee have contacts to this action. On the one hand, the injury occurred in Kentucky, and the conduct causing the injury occurred mainly in Kentucky.[3] On the other hand, J.E. and the rest of the Eastman family were residents of Tennessee.[4] The fourth factor – the place of the relationship between the parties – is irrelevant here, because the

---

[3] The negligent entrustment claim alleges that Crete negligently entrusted Pope with the tractor-trailer. Presumably, this entrustment occurred at the beginning of Pope's trip or when Pope was hired. Although the defendants do not specify where this entrustment occurred, they assert that it did not happen in Kentucky. (*See* Docket No. 64 at 2.) In any event, the immediate cause of the accident was Pope's driving, which took place in Kentucky.

[4] There is no dispute that the parties' state of residence is also their state of domicile. Thus, there is no need for the court to distinguish between residence and domicile. *Cf. MacDonald*, 110 F.3d at 344 (holding that, if a person's domicile and residence are different, domicile is a more important contact than residence).

Eastmans had no relationship with the defendants before the accident.[5]

The defendants argue that the plaintiffs' state of residence is the most important factor and that this tips the balance in favor of Tennessee.[6] (Docket No. 64 at 9-10.) The defendants largely rely on the Sixth Circuit's decision in *MacDonald*. In that case, a University of Kansas debate team was driving in a van to a tournament in Georgia; while they were driving through Tennessee, a deer ran onto the road, causing them to swerve and crash. *MacDonald*, 110 F.3d at 339. One passenger, who resided in Kansas but was domiciled in South Dakota, died. The decedent's estate sued the University of Kansas and the driver, as well as General Motors, alleging that the van was defectively designed. *Id.* The claim against General Motors went to trial, and the district court, applying Tennessee's choice-of-law rules, held that Kansas law

---

[5] Of course, the relationship among the plaintiffs – that is, among Kenneth Eastman, Misleni Eastman, G.E., and J.E. – was based in Tennessee. The defendants suggest that this fact is significant. (Docket No. 64 at 11.) But the Restatement is concerned only with "the relationship *between the plaintiff and the defendant*." Restatement (Second) of Conflict of Laws § 145 cmt. e (emphasis added). The fact that co-plaintiffs lived together in a particular state is irrelevant to the "relationship" factor.

[6] One comment to Section 178 of the Restatement provides:

> The state of conduct and injury will not, by reason of these contacts alone, be the state which is primarily concerned with the measure of damages in a wrongful death action. The local law of this state will, however, be applied unless some other state has a greater interest in the determination of this issue. In a situation where one state is the state of domicil *of the defendant, the decedent and the beneficiaries*, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages.

Restatement (Second) of Conflict of Laws § 178 cmt. b (emphasis added). Here, of course, Tennessee is only the domicile of the decedent and his beneficiaries. It is not the domicile of the defendants.

governed the measure of damages. *Id.* Kansas law limits non-pecuniary damages to $100,000. *Id.* at 341.

The Sixth Circuit reversed, determining that South Dakota law, which places no cap on non-pecuniary damages, applied. *Id.* at 341-46. The parties had "agreed that the law of Tennessee, the state where the injury occurred, should not be applied because the location of the accident there was fortuitous." *Id.* at 341. As to the "domicile and residence" factor, the court found that South Dakota had the most significant relationship to the measure of damages, because the decedent and his parents were domiciled there. *Id.* at 344. The "relationship" factor, however, pointed to Kansas, because "all persons in the van lived in Kansas," the van "was purchased . . . in Kansas by a Kansas organization, and the students and coaches boarded the van in Kansas for a trip that was to terminate in that state." *Id.* at 344.

To determine whether the contacts with Kansas or South Dakota were more important, the Sixth Circuit "examined the policies behind the laws of these two states" and "evaluate[d] the interests of [the states] in applying their own laws to the measurement of damages for this particular wrongful death claim." *Id.* at 344-45. While North Dakota's wrongful death statute was designed to fully compensate the victim's family, Kansas' statute was designed to do that *and* to "eliminat[e] excessive verdicts that can result from jury sympathy for the decedent's family." *Id.* at 344. The court noted that North Dakota had a "strong interest in assuring that next of kin are fully compensated for the tortious death of its domiciliaries." *Id.* at 345 (quotation marks omitted).

Ultimately, the court reasoned that North Dakota had the greater interest in the action:

7

> Kansas' interest in this claim is not as great as North Dakota's. Kansas does have an interest in ensuring that its residents are adequately compensated for their injuries, but this interest is adequately served by applying North Dakota law. Moreover, applying the Kansas statute would frustrate North Dakota's policy of fully compensating its domiciliaries for their injuries.
>
> And while Kansas also has an interest in protecting its residents from excessive jury verdicts, this interest is not as compelling in this case, where all residents of Kansas . . . who were defendants have settled and will not be affected by the jury's damages calculations. General Motors, of course, remains a party to the suit, and Kansas has an interest in protecting the automobile manufacturer from an excessive verdict, since that manufacturer does business within Kansas' borders. However, General Motors also does business in North Dakota, so there is no compelling reason to give greater weight to Kansas' interest in this matter. We therefore find that the domicile of the decedent and his survivors, rather than the center of the parties' relationship, is the most important contact in this application of the Restatement analysis.

*Id.* at 345 (paragraph break added).

As an initial matter, unlike in *MacDonald*, the plaintiff here does not concede that the state where the accident occurred has little interest in the action. The defendants argue that, as in *MacDonald*, the location of the instant accident was "fortuitous."[7] But there, the accident was caused by a deer in the middle of the road – essentially, an act of nature.[8] In addition, the

---

[7] Fortuitous is defined as "[o]ccurring by chance." Black's Law Dictionary (9th ed. 2009).

[8] Furthermore, unlike the cross-country trip at issue in *MacDonald*, the Eastmans were driving from Gallatin, Tennessee to Fort Knox, Kentucky, via Interstate 65. From Gallatin, it is approximately 15 miles to I-65; from there, it is only approximately 9 miles on I-65 to the Kentucky border. (*See* Docket No. 71, Ex. 3.) The Eastmans planned to travel another 95 miles on I-65 in Kentucky en route to Fort Knox. (*Id.*) Given that the majority of their planned trip was on Kentucky's stretch of I-65, it was not mere chance that their accident occurred in that state.

8

relevant conduct causing the injury occurred in Michigan, where the van was designed. Here, in contrast, the accident occurred when defendant Pope drove his truck into the plaintiff's car on a Kentucky freeway. Kentucky has at least some interest in ensuring that people who negligently drive on the state's roads properly compensate their victims.

More important, unlike in *MacDonald*, the application of Kentucky law will not frustrate the policies behind Tennessee's damages rule. The defendants argue that "[a] state has a 'strong interest in assuring that next of kin are fully compensated for the [tortious] death of its domiciliaries." (Docket No. 64 at 14 (quoting *MacDonald*, 110 F.3d at 345).) But, if Kentucky law applies, the plaintiff will receive *more* compensation than he would under Tennessee law. Thus, the application of Kentucky law will not frustrate Tennessee's interest in seeing that its citizens are fully compensated; instead, "this interest is adequately served by applying [Kentucky] law."[9] *MacDonald*, 110 F.3d at 345. The defendants offer no support for the proposition that Tennessee has an interest in preventing its citizens from receiving a "windfall," pursuant to other states' laws, from other states' citizens. Moreover, to the extent that Tennessee has any interest in preventing excessive awards against Crete, that interest is not compelling, because Crete is not a citizen of Tennessee, and it conducts business in both Tennessee and

---

[9] Citing *In re Air Crash Disaster at Boston*, 399 F. Supp. 1106 (D. Mass. 1975), the *MacDonald* court noted that "other courts have held in wrongful death cases that the most important contact in the Restatement analysis is the domicile of the decedent or his or her heirs." *MacDonald*, 110 F.3d at 345. But this rule typically applies in cases where the law of the domicile state offers higher compensation to the plaintiff. In *Air Crash Disaster*, the court applied the damages law of Vermont, the plaintiffs' domicile state, because the law of Massachusetts, where the injury occurred, would not fully compensate them. 399 F. Supp. at 1108. Similarly, in *MacDonald*, the Kansas law would have limited the compensation available to the North Dakota plaintiff.

Kentucky.[10] *Id.* (finding that a state's "interest in protecting its residents from excessive jury verdicts" is "not as compelling" when the defendant is not a resident of the state and conducts business in both relevant states).

In sum, the injury here, as well as the immediate conduct causing the injury, occurred in Kentucky. Although the decedent and his parents are Tennessee residents, this, standing alone, is not enough to show that Tennessee has a "more significant relationship" with the issue of damages. Regardless, the application of Kentucky law will not frustrate Tennessee's interest in seeing its citizens fully compensated for their injuries. Thus, the law of Kentucky governs.[11] Restatement (Second) of Conflict of Laws §§ 175, 178; *see also Bowman v. Zackaroff*, 862 F.2d 1257, 1260-62 (6th Cir. 1988) (undertaking a Restatement analysis and holding that the mere fact that the plaintiffs were domiciled in Ohio was not enough to compel the application of Ohio

---

[10] The defendants point out that Crete has a terminal in Tennessee but not in Kentucky. They do not, however, argue that Crete does not conduct business in Kentucky. Obviously, Crete's trucks travel on routes through Kentucky. Furthermore, Crete's web site, in a section titled "Transportation Services," states: "Our product offerings include dry van, protective temperature control trailers and flat beds servicing *all 48 [contiguous] states*." Crete Carrier Corp., http://www.cretecarrier.com/customers/transportation_services/index.htm (last visited April 5, 2011) (emphasis added). The court may take judicial notice of the content of this public web site. *See Johnson v. Lodge*, 673 F. Supp. 2d 613, 618 n.10 (M.D. Tenn. 2009).

[11] The other cases cited by the defendants are distinguishable, because those courts relied on more than just the plaintiff's state of residence. In *Lemons v. Cloer*, 206 S.W.3d 60 (Tenn. Ct. App. 2006), a school bus that was transporting several Georgia children to a Georgia school traveled through Tennessee, at which point it was hit by a train. *Id.* at 62-63. The Tennessee Court of Appeals found that Georgia had the most significant relationship to the suit filed by Georgia plaintiffs against Georgia defendants. *Id.* at 67. Similarly, in *Hataway*, a Tennessee plaintiff sued a Tennessee defendant over a scuba-diving accident that occurred in Arkansas; the dive was a part of a scuba class taught by the defendant at a Tennessee college. 830 S.W.2d at 54, 60. The Tennessee Supreme Court found that Tennessee, not Arkansas, had the most significant relationship to the suit. *Id.* at 60.

damages law); *Fleming v. Stifolter*, 656 F. Supp. 2d 764, 770 (W.D. Tenn. 2009) (holding that the substantive law of Arkansas applied to an action, filed by a Mississippi plaintiff against Tennessee defendants, arising from a jet ski accident in Arkansas).

## CONCLUSION

For the reasons stated herein, the plaintiff's Motion in Limine (Docket No. 62) is **GRANTED**, and the motions in limine filed by defendant Crete Carrier Corp. (Docket No. 63) and by defendant Michael Pope (Docket No. 65) are **DENIED**. The court finds that Kentucky law governs the issue of damages. Accordingly, evidence regarding J.E.'s projected living expenses or "personal consumption" is irrelevant and, thus, is inadmissible at trial under Federal Rule of Evidence 402.

It is so Ordered.

Entered this 5th day of April 2011.

ALETA A. TRAUGER
United States District Judge